UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01817-JMS-MG |
| | ) |
| J. SURGUY, | ) |
| | ) |
| Defendant. | ) |

**Order Granting Motion for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff John Thompson, an inmate currently incarcerated at Wabash Valley Correctional Facility, brought this action under 42 U.S.C. § 1983 alleging that a correctional officer, J. Surguy, used excessive force against him while handcuffing him and placing him in a cell. Dkt. 13. Defendant J. Surguy moved for summary judgment, dkt. 46, Mr. Thompson responded, dkt. 52, defendant replied, dkt. 54, and Mr. Thompson filed a sur-reply, dkt. 55. For the reasons explained below, the motion for summary judgment is **granted**.

## I. MOTION FOR APPOINTMENT OF COUNSEL

Before addressing Officer Surguy's motion for summary judgment, the Court will first address Mr. Thompson's recently filed motion for appointment of counsel. Dkt. 68.

Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, No. 21-1055, -- F.4th --, 2022 WL 3038877, at *6 (7th Cir. Aug. 2, 2022) (explaining that courts must be careful

stewards of the limited resource of volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682; *see also Thomas v. Anderson*, 912 F.3d 971, 978 (7th Cir. 2019) (because plaintiff did not show that he tried to obtain counsel on his own or that he was precluded from doing so, the judge's denial of these requests was not an abuse of discretion). Mr. Thompson has attempted to contact multiple attorneys with requests for representation without success. The Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should

account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, No. 21-1055, -- F.4th --, 2022 WL 3038877, at *3 (quoting *Pruitt,* 503 F.3d at 655). Mental illness, while relevant to the Court's inquiry, does not create a legal entitlement to the appointment of counsel. *Perry v. Sims*, 990 F.3d 505, 513 (7th Cir. 2021). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655).

"[T]he merit of a plaintiff's claim is another factor a district court may consider while making an individualized determination whether to recruit counsel based on the plaintiff and the claim in front of it." *Watts*, -- F.4th --, 2022 WL 3038877, at *9. Specifically, the Court may consider all "'available information and the judge's experience to assess the importance and potential merits of the case and to assign priority accordingly.'" *Id.*, -- F.4th --, 2022 WL 3038877, at *6 (quoting *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020)). This factor reflects that the decision to recruit counsel remains a practical one because "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated litigants) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Id.*, -- F.4th --, 2022 WL 3038877, at *6.

Mr. Thompson asserts that he has only a G.E.D. and suffers from multiple severe mental health disabilities. Dkt. 69 at 2. He further states that he is being held in segregation and therefore

3

has no ability to conducted legal research or to investigate facts. *Id.* Mr. Thompson argues that the case will require expert testimony, as well as discovery of documents and depositions of witnesses. *Id.* Finally, Mr. Thompson argues that defendant's counsel made it difficult for him to obtain discovery. Dkt. 68 at 1.

Throughout this case, Mr. Thompsons has actively participated in the process and filed motions and responses when appropriate. Mr. Thompson references the need for expert testimony due to the medical claims in this case, but the Court notes that the only claim that proceeded beyond screening is a straightforward excessive force claim against Defendant Surguy. At this point, there is no need for counsel for the purpose of taking depositions or conducting discovery because the discovery period has closed, and summary judgment is fully briefed. Finally, as discussed more in depth below, the Court concludes that based on the record, no reasonable jury could find that Officer Surguy used excessive force against Mr. Thompson. The Court cannot discern, and Mr. Thompson has not provided, any way in which the appointment of counsel would alter that decision.

Accordingly, Mr. Thompson's Plaintiff's motion for assistance recruiting counsel, dkt. 68, is **denied**.

## II. SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## B. FACTUAL BACKGROUND

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

During all times relevant to the amended complaint, Mr. Thompson was a convicted and sentenced inmate at Pendleton Correctional Facility (PCF), dkt. 13 at 1, and Officer Surguy was employed by the Indiana Department of Correction as a correctional officer at PCF, dkt. 22 at 1. On the afternoon of May 22, 2020, Officer Surguy came to Mr. Thompson's cell and informed him that someone was there to see him, and that Mr. Thompson needed to come with Officer Surguy to the counselor's office. Dkt. 47-1 at 10:2-24. Mr. Thompson walked to the counselor's office, but there was no one in the office. *Id.* At that time, Officer Surguy escorted Mr. Thompson to the "shakedown booth" and ordered him to step in. *Id.* Mr. Thompson testified that he questioned Officer Surguy as to the reason he was being ordered into the shakedown booth as "he had done nothing wrong." *Id.* Mr. Thompson further testified that they "kept going back and forth" and Officer Surguy asked him a few times to enter the booth. *Id.* at 12:2-11.

Mr. Thompson testified that this was not his first shakedown and that he had complied on all previous occasions. Dkt. 47-1 at 11:12-22. According to Mr. Thompson, "[b]efore that day, any other time I was shooken down, they cuffed me up in my cell and then walked me—they told me I was being shaked down, and they walked me to the shakedown booth, and I followed the procedure." *Id.* at 12:18-22. Mr. Thompson further testified that he was upset about the shakedown on the day in question because he did not know what was going on; because he and Officer Surguy "didn't get along with each other;" and because Officer Surguy had used a lie as a ploy to get Mr. Thompson out of his cell. *Id.* at 12:15-25.

Mr. Thompson testified that, when he was standing in front of the shakedown booth, Officer Surguy requested that he turn around so that that Officer Surguy could place restraints on him but instead of complying, Mr. Thompson questioned the order. Dkt. 47-1 at 14:14-22. According to Mr. Thompson, Officer Surguy "just lunged at [him] and grabbed [his] left wrist and

6

just, like, moved [Mr. Thompson] to the ground and put his knee on [Mr. Thompson's] back and cuffed [him] up." *Id.* at 15:5-8.

A review of the prison security video from the incident shows that at approximately 1:54 PM on May 22, 2020, Mr. Thompson was escorted from his cell to the shakedown booth by Officer Surguy.[1] Video at 1:54 PM. Upon arrival to the shakedown booth, Mr. Thompson paused in the doorway of the cell, turned around to face the Officer Surguy, and they engaged in conversation for about two minutes. *Id.* Officer Surguy gestured to the shakedown booth multiple times during the course of the conversation. *Id.* At 1:55 PM, Officer Surguy took a step back and placed a hand on his handcuffs while continuing to converse with Mr. Thompson. *Id.* At 1:56 PM, Officer Surguy reached for Mr. Thompson and attempted to move Mr. Thompson's arm behind his back to cuff him. *Id.* Mr. Thompson resisted Officer Surguy's attempt to place his left arm behind his back, at which point, Officer Surguy forced Mr. Thompson to the ground and handcuffed him. *Id.* As Mr.

---

[1] The video of this incident was filed manually in CD format. *See* dkt. 49. Both parties agree that due to facility delays, Mr. Thompson was initially not able to view the video. Dkt. 54 at 4. On October 12, 2021, Mr. Thompson was given an opportunity to watch the video for the first time. On the same day, Mr. Thompson filed his first of several motions and submissions arguing that counsel for Officer Surguy provided Mr. Thompson with the incorrect security footage as an exhibit to his motion. Dkts. 56. Mr. Thompson filed similar motions on November 29, 2021 and May 6, 2022. Dkts. 58, 62. In those motions, he argues that the footage that Officer Surguy provided was from a different cellblock and date and did not show the incident at the center of this case. Dkt. 56. It appears that Mr. Thompson wanted the Court to order Officer Surguy to provide him with different footage. Judge Garcia has addressed this request from Mr. Thompson on two occasions, April 27 and May 10, and determined both times that the request was untimely as "The discovery period in this matter closed on August 10, 2021, dispositive motions were due by September 10, 2021, and the pending summary judgment motion at Docket No. 46 has been fully briefed since October 4, 2021." Dkt. 61; *see also* dkt. 63. Mr. Thompson has since renewed his request in a motion for court assistance and a motion to compel. Dkts. 64, 66. Judge Garcia has already addressed this issue, and the Court will not re-visit the request. Accordingly, Mr. Thompson's motions are denied.

Moreover, "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 (7th Cir. 2019). The Court has reviewed the proper video footage, as confirmed by reference to the prison disciplinary hearing report, and thus does not take into consideration the description of the video by either party.

Thompson went to the ground, he briefly fell against a laundry cart that was next to him during the scuffle. *Id.*

As a result of this incident, Mr. Thompson was issued a conduct report by Officer Surguy for refusing multiple orders. At the ensuing disciplinary hearing, the hearing officer found Mr. Thompson guilty of staff provocation. Dkt. 47-2.

Mr. Thompson testified that he had a torn muscle in the lower left side of his back, *id.* at 15:9-16, and he has provided prison medical records which reflect many instances of him seeking Tylenol and treatment from the prison medical staff for his back pain in the months after the incident, dkt. 55-1 at 4-29.

## C. DISCUSSION

Mr. Thompson claims that Officer Surguy used excessive force when placing him in handcuffs before moving him into the shakedown booth. Correctional officers violate the Eighth Amendment when they use force "not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (cleaned up). To determine whether Officer Surguy applied force to Mr. Thompson in a good faith effort to maintain order and discipline or applied force maliciously and sadistically for the purpose of causing harm, the Court analyzes a number of factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety or staff and inmate, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). That said, "not every malevolent touch by a prison guard gives rise to a federal cause of action." *McCottrell*, 933 F.3d at 665 (cleaned up). Instead, "the Eighth

Amendment's prohibition against cruel and unusual punishments excludes from constitutional recognition *de minimis* uses of force that are not of the kind that would be repugnant to the conscience of mankind." *Id.* (cleaned up).

Mr. Thompson can prevail only if a reasonable jury could review the designated evidence and conclude that Officer Surguy did not apply force to Mr. Thompson in a good faith effort to maintain order and discipline but instead applied force maliciously and sadistically for the purpose of causing harm. After applying the *Whitley* factors, however, no reasonable jury could reach that conclusion. Mr. Thompson admits that he and Officer Surguy "kept going back and forth" in front of the shakedown booth, and that Officer Surguy asked him a few times to enter the booth and Mr. Thompson refused. Dkt. 47-1 at 11:2-11. When Officer Surguy requested that Mr. Thompson turn around so that that Officer Surguy could place restraints on him, Mr. Thompson acknowledges that he did not comply and instead questioned the order. *Id.* at 14:14-22.

The video reveals that Officer Surguy did not even touch Mr. Thompson until he attempted to place Mr. Thompson in handcuffs, and Mr. Thompson pulled away. Video at 1:56 PM. This occurred after several minutes of Officer Surguy verbally asking Mr. Thompson to comply and Mr. Thompson, by his own admission, refusing to do so. Video at 1:55 PM. Officer Surguy applied some force to handcuff Mr. Thompson, but a correctional officer is entitled to use force when a prisoner disobeys a valid order, so long as the degree of force was not excessive. *See Lewis v. Downey*, 581 F.3d 467, 476–77 (7th Cir. 2009); *see also* Seventh Circuit Pattern Jury Instruction 7.18: Eighth Amendment: Excessive Force Against Convicted Prisoner—Elements ("An officer is entitled to use some force if a prisoner disobeys a valid command. You may still consider, however, whether the amount of force used was excessive.") (citing *Lewis*, 581 F.3d at 476–77). Part of the reason that Mr. Thompson went to the ground in the manner that he did was due to the

laundry cart on wheels that was next to him, which Mr. Thompson was holding onto at the beginning of the interaction. Video at 1:56 PM. Any reasonable jury considering the designated evidence would find that the force Officer Surguy used was not excessive to the task at hand—handcuffing Mr. Thompson so he could be placed in the shakedown booth. Officer Surguy immediately stood Mr. Thompson up after securing his cuffs and placed him in the shakedown booth. That is, the undisputed record evidence conclusively shows that Officer Surguy grabbed Mr. Thompson because he was refusing to be handcuffed and placed in the shakedown booth, not because he was simply trying to cause harm.

The Court acknowledges that Mr. Thompson sought medical treatment for his back injury for several months after this interaction. Even assuming Officer Surguy caused Mr. Thompson's back injury, though, the degree of injury is only one factor to be considered. In light of Mr. Thompson's admitted refusals to comply with Officer Surguy's repeated instructions to get handcuffed and enter the cell, any reasonable jury would still find that the force used was not excessive in spite of the need for ongoing medical treatment.

In opposition to Officer Surguy's motion, Mr. Thompson primarily argues that Officer Surguy was not authorized to conduct a shakedown on Mr. Thompson's cell, and when he repeatedly told Officer Surguy that he had done nothing wrong and requested that Officer Surguy call a supervisor, Officer Surguy instead "attacked him." Dkt. 52 at 2; dkt. 55 at 2. As stated above, "[o]rders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.... " *Lewis*, 581 F.3d 467 at 476 (cleaned up). Moreover, whether Mr. Thompson felt that Officer Surguy was authorized to conduct a shakedown of his cell is not at issue in this case; rather it is a question of whether Officer Surguy used excessive force when handcuffing Mr. Thompson and placing him in the shakedown booth. Upon review of all the

evidence in the record, no reasonable jury could conclude that the force used by Officer Surguy was excessive and thus Officer Surguy is entitled to summary judgment.

### III. CONCLUSION

For the foregoing reasons, defendant Surguy's motion for summary judgment, dkt. [46], is **granted**. Mr. Thompson's motion for court assistance, dkt. [64], and motion to compel, dkt. [66], are **denied**. Officer Surguy's motion to strike, dkt. [67], is **denied** as moot.  Finally, also for the reasons stated herein, Mr. Thompson's motion for the appointment of counsel, dkt. [68], is **denied**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 8/15/2022

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

JOHN THOMPSON
202435
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only